# United States District Court
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| U.S. ETHERNET INNOVATIONS, LLC § | |
| § | |
| § | Case No. 6:11-cv-491 |
| v. § | |
| § | |
| TEXAS INSTRUMENTS INCORPORATED § | |

## MEMORANDUM OPINION

Currently before the Court is Defendant Texas Instruments Incorporated's (TI) equitable defense of laches, the only remaining issue in this patent infringement case.[1] At the evidentiary hearing on laches, the Court heard the live testimony of five witnesses and also accepted deposition designations, prior trial testimony, and exhibits to consider separate from the live testimony. Having considered the evidence, the parties' arguments, and the applicable law, the Court rejects Defendant's laches defense.

## Background

**A. TI's Position**

During a year and a half period spanning 2002–2004, TI and 3Com Corporation (3Com)[2] negotiated entering into a cross-portfolio license as the result of a patent dispute involving a third-party's patent. 3Com began reviewing TI products for potential infringement during this time. TI contends this review put 3Com on notice of TI's infringement based on an email that

---

[1] A verdict has previously been entered on behalf of Plaintiff U.S. Ethernet Innovations, LLC (USEI) on all other issues.

[2] 3Com originally owned the patents in suit. The patents in suit are part of a group of patents 3Com commonly referred to as the "Parallel Tasking Patents." 3Com sold Parallel Tasking Patents t to USEI in May of 2009. Thus, USEI is the successor-in-interest to the patents in suit.

3Com's director of licensing sent to 3Com's general patent counsel in June 2004 that suggests TI's AR7 chip infringed 3Com's "ethernet performance patents."

TI also points to another TI chip that 3Com actually purchased. Near the end of TI and 3Com's negotiations, 3Com began working with TI to purchase a chip for 3Com's new VoIP phone. TI argues that the chip 3Com purchased, the TNETV1050 (the Titan chip), contains the same Ethernet module that the jury found infringed the '872 Patent. TI points to a string of emails, where 3Com engineers asked TI engineers several questions relating to the Ethernet module on the Titan chip, to show 3Com knew or should have been known of TI's infringement.

To show evidentiary prejudice, TI cites two pieces of prior art that TI claims it intended to present at the invalidity trial: the Intel 82593 chip (the Intel Prior Art) and the Second Generation TMS380C16 chip (the TI Prior Art). TI argues that it had to drop the Intel Prior Art because it lacked documents showing when the Intel Prior Art went on sale. For the TI Prior Art, TI states that it could not locate source code that was critical to show the TI Prior Art anticipated the '872 Patent.

As for economic prejudice, TI relied on the testimony of two TI employees, Denis Beudoin and Mark Bryans. Mr. Bryans designed all three categories of Ethernet modules the jury found infringed the '872 Patent and testified that removing the infringing features of the chips could have been done by simply removing a few lines of code. Mr. Beudoin, the architect of the chips that carried Mr. Bryans's Ethernet modules, testified that TI could have implemented Mr. Bryans's redesign in anywhere from six months to a year between 2004–2011. TI argues that because TI could have implemented a non-infringing alternative, TI unnecessarily incurred damages it could have otherwise avoided.

B. USEI's Position

USEI primarily argues that TI's unclean hands should keep it from benefiting from an equitable remedy. USEI points to TI's unprofessional contact with the employer of USEI's invalidity expert, TI's litigation conduct, and several of TI's discovery abuses, the most important of which is that TI did not properly disclose either the AR7 or Titan chips during discovery.

USEI also contends that TI cannot establish an unreasonable delay. First, USEI asserts that no evidence shows that either chip TI identifies actually infringes the '872 Patent. As a fallback, USEI argues that even if 3Com knew or should have known of TI's infringement, 3Com's delay is excused due to 3Com's five-year legal battle against D-Link and Realtek to prove infringement of the Parallel Tasking Patents, 3Com's economic distress, and 3Com's sale of the Parallel Tasking Patents.

USEI rebuts TI's claim of economic prejudice by arguing that the testimony established that even if TI possessed the capability to implement non-infringing alternatives, TI has never implemented a change to its products based on allegation of infringement. To rebut evidentiary prejudice, USEI points to TI's invalidity expert's report. USEI notes that contrary to TI's position in the laches context, TI's expert offered an unqualified opinion that Intel Prior Art and TI Prior Art invalidate the '872 Patent.

**Legal Standard**

The equitable defense of laches may be available where the plaintiff unreasonably delayed filing its infringement suit. *See A.C. Aukerman Co. v. R.L. ChaidesConstr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc). The defense is applicable where the accused infringer proves two things: (1) "the plaintiff delayed filing suit for an unreasonable and inexcusable

length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant," and (2) the defendant suffered material prejudice as a result of the delay *Id.* at 1032. The defendant must prove delay and prejudice by a preponderance of the evidence. *Id.* at 1045.

"The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *Id.* at 1032. Circumstances that may justify delay include, but are not limited to: (1) being involved in other litigation, (2) being involved in negotiations with the defendant, or (3) poverty. *Id.* at 1033.

Material prejudice may be economic or evidentiary. *Id.* Economic prejudice is determined by whether the alleged infringer changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement. *Id.* But a change in position alone is not sufficient to show economic prejudice. Instead, the defendant's losses must come as a result of that change in economic position that likely would have been avoided if the patentee had filed this lawsuit sooner. *Id.* Evidentiary prejudice "may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.*

If the defendant proves that the plaintiff delayed filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing acts, a rebuttable presumption of laches exists. *See id.* at 1035–36. The presumption shifts the burden of production to the plaintiff to come forward with evidence to prove that the delay was reasonable or the defendant did not suffer material prejudice. *Id.* at 1038. But even if the plaintiff does not

rebut the presumption, laches remains an equitable determination left to the discretion of the Court. *Id.* at 1032, 1036.

Additionally, the plaintiff may defeat laches by showing that the defendant has unclean hands as the result of "particularly egregious conduct [that] change the equities significantly in plaintiff's favor." *Id.* at 1033.

## Analysis

The Court begins its analysis of the parties' evidence and arguments by addressing whether TI fully disclosed its position on laches during the discovery period in this case. As set forth below, the Court finds that TI failed to disclose the basis for its laches defense during discovery and, therefore, cannot prove laches. Additionally, even if the Court considered TI's undisclosed evidence, the Court would reject TI's laches defense because TI cannot prove material prejudice, and its unclean hands cannot benefit from an equitable remedy.

### A. Disclosure of Laches Defense

The crux of TI's laches defense are emails sent by 3Com employees that TI contends show that 3Com was on notice that the AR7 chip and the Titan chip infringed the '872 Patent. But at the evidentiary hearing, Plaintiff developed its claim that TI did not disclose either chip during discovery, and thus, that TI should not be able to rely on these chips to prove laches.

USEI demonstrated that it asked TI to identify which TI chips contained Ethernet modules that likely contained infringing capabilities. USEI showed the interrogatory and TI's response to two TI employees with knowledge of the AR7 and Titan chips, Mr. Bryans and Mr. Beaudoin, who both testified at the hearing. After reviewing TI's response, both Mr. Bryans and Mr. Beaudoin confirmed that TI disclosed neither the AR7 or Titan chip. After this evidence was introduced, TI made no effort to rebut the fact that it did not disclose the two chips it contends

establish a basis for its defense of laches. Accordingly, the Court finds that TI did not disclose either the AR7 or the Titan chips during discovery.

In view of TI's lack of disclosure, the Court finds that it would be inequitable to allow TI to rely on either chip as a basis for its laches defense. *PACT XPP Technologies, AG v. Xilinx, Inc.*, 2:07-CV-563-RSP, 2013 WL 4736238, at *10 (E.D. Tex. Sept. 3, 2013) (excluding evidence from the laches analysis that was not properly disclosed during discovery). Because TI relies on these non-disclosed chips to prove 3Com, as USEI's predecessor-in-interest, was on notice of TI's infringement, the Court concludes that TI possesses no admissible evidence to prove an unreasonable delay.

**B. Delay**

If the Court were to consider the AR7 and Titan chips as admissible evidence, the Court would find that 3Com's awareness of the Titan chip establishes 3Com should have known of TI's infringement by August of 2004.[3] As discussed below, however, that alone is not enough for TI to establish laches.

**1. AR7 Chip**

For the AR7 chip, TI points to an April 2004 email sent by Don Drinkwater, 3Com's director of licensing. In that email, Mr. Drinkwater informs 3Com's patent counsel, Bill Becker, that the AR7 chip "may infringe our ethernet performance patents." TI contends that "ethernet performance patents" is synonymous with "Parallel Tasking Patents." To establish that

---

[3] TI also argues that 3Com's general investigation of TI products during the cross-license negotiations should have put 3Com on notice. But TI does not point to any evidence that shows 3Com investigated TI products for infringement of the Parallel Tasking Patents. The closest TI comes to linking 3Com's review of TI products to the Parallel Tasking Patents is a document that contains unrelated references to both 3Com's review of TI's products and 3Com's patent infringement suit involving the Parallel Tasking Patents. Thus, the Court is not persuaded that it is more likely than not that 3Com's investigation put it on notice of TI's infringement.

contention, TI relies on Mr. Becker's testimony that he believed Com employees referred to the Parallel Tasking patents as Ethernet performance patents.

But USEI rebutted Mr. Becker's testimony with internal 3Com documents that demonstrate that 3Com consistently referred to the Parallel Tasking Patents either by that name or as "NIC performance patents," based on network interface cards (NICs) 3Com touted as embodying the patented technology, not as "Ethernet performance patents." Additionally, USEI introduced 3Com documents listing out the company's patent portfolio in categories. 3Com titled one category "Parallel Tasking"; it titled the other category "Performance Patents." The number of patents listed in the Parallel Tasking category is consistent with the number of patents 3Com sold to USEI. Accordingly, the Court finds Mr. Drinkwater's email does not prove by a preponderance of the evidence that 3Com was on notice of TI's infringement through the AR7 chip because TI did not show that it is likely more likely than not that Mr. Drinkwater referred to the Parallel Tasking Patents in his email.

**2. Titan Chip**

TI did show that is more likely than not 3Com knew or should have known that Titan chip contained an Ethernet module that infringes the '872 Patent. The same TI employees, Mr. Bryans and Mr. Beaudoin, testified that the Titan chip contained a CPMAC Ethernet module, which is the same Ethernet module the jury found infringed the '872 Patent. TI also introduced email correspondence between 3Com and TI engineers in which the 3Com engineers received guidance on how to record the statistics of the CPMAC Ethernet module on the Titan chip to assist 3Com in implementing the Titan chip in 3Com's VoIP phone. The Court finds that it is more likely than not that 3Com knew or should have known of TI's infringement based on investigating the Titan chip's Ethernet module to implement it in 3Com's VoIP phone.

Because 3Com investigated the Titan chip in mid-2004 and eventually implemented the Titan chip in its VoIP phone in 2005, the Court finds there was a delay of more than six years from when 3Com knew or should have known of TI's infringement and the filing of this suit. A delay of more than six years gives rise to a rebuttable presumption of laches. *See Aukerman*, 960 F.2d at 1035–36. Accordingly, the Court concludes that—if considered—the Titan chip establishes a rebuttable presumption of laches.

### 3. Justification for the Delay

The Court rejects USEI's proffered justifications for 3Com's delay. Although each of USEI's justifications match a category *Aukerman* recognized as an excuse for delay, *Aukerman* recognized those categories only as possible justifications. *See id.* at 1033. In this case, the Court is not persuaded that 3Com's litigation with D-Link and Realtek, its financial issues, and the sale of the Parallel Tasking Patents to USEI justify 3Com's lack of action regarding TI's infringement.

TI argues that all 3Com needed to do to excuse its delay is provide TI with notice of its infringement. In *Aukerman*, the Federal Circuit declined to impose a rigid requirement that a patentee provide notice to potential infringers while it pursued litigation against other infringers. *See Auckerman*, 960 F.3d at 1039. But the Federal Circuit also noted that "[w]here there is prior contact [between the patentee and the accused infringer], the overall equities may require appropriate notice." *Id.* (citing *Jamesbury Corp. v. Litton Indus. Products Inc.*, 839 F.2d 1544, 1553 (Fed. Cir. 1988)). At the time 3Com should have been aware of TI's infringement, it was wrapping up licensing negotiations with TI and purchasing a TI chip that infringed the '872 Patent. The Court finds that because of 3Com's on-going dialogue with TI, 3Com could have easily and inexpensively provided notice that 3Com believed TI infringed the '872 Patent. That

3Com could have done so inexpensively undercuts USEI's proffered justifications relating to its financial distress, as well.

Accordingly, if the Court reached this issue, it would conclude USEI has not offered a justification for the delay.

C. **Prejudice**

Notwithstanding the unjustified delay, prejudice must still be shown.

1. **Economic**

TI relied on two engineers to establish that it could have implemented non-infringing alternatives through product redesigns. Both testified that a redesign was feasible on direct examination. But on cross-examination, neither recalled TI implementing a product redesign to avoid an accusation of patent infringement. That Mr. Beaudoin cannot recall implementing a change to TI's product to avoid an accusation of infringement is especially significant because he holds product development requirements for all of TI's business units.

In view of the testimony that TI has never redesigned a product to avoid infringement allegations and TI's unwavering belief that the patents in suit were invalid, the Court concludes that USEI rebutted TI's claim of economic prejudice as a result of the unreasonable delay. After considering all of the evidence, the Court finds that TI did not show by a preponderance of the evidence that TI would have avoided infringement if 3Com, as USEI's predecessor-in-interest had filed suit or provided notice. *Aukerman* at 906 F.2d at 1033; *accord Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1372 (Fed. Cir. 2001).

2. **Evidentiary**

The Court finds that TI's cursory allegation that it could not assert the Intel Prior Art and the TI Prior Art insufficient to prove evidentiary prejudice. At the hearing, USEI noted that TI's

expert offered opinions on both pieces of prior art without qualification or concern about missing documents. TI did not rebut that evidence.[4] In view of the fact that TI's expert offered unqualified opinions on both pieces of prior art, the Court finds that TI was able present a full and fair defense on the merits and, therefore, suffered no evidentiary prejudice. *See Aukerman*, 960 F.2d at 1033.[5]

In view of the fact that USEI successfully rebutted TI's allegations of prejudice, the Court finds that even if 3Com unreasonably delayed in filing suit or providing notice, TI suffered no prejudice. Therefore, even if Court were to consider the AR7 and Titan chips as evidence, the Court concludes TI cannot benefit from its laches defense because it cannot carry its burden of proving laches by a preponderance of the evidence. *See id.* at 1038.

3.  **Unclean Hands**

The equitable doctrine of unclean hands bars a party from asserting claims where that party engaged in litigation misconduct. See *Aptix Corp. v. Quickturn Design Sys.*, 269 F.3d 1369, 1374–75 (Fed. Cir. 2001). The unclean hands doctrine is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245–46 (1933).

If the Court reached this analysis, then the Court would conclude that TI should not benefit from laches because its hands are not clean. As is detailed both in this record and in the proceeding severed out of this case to resolve allegations that TI impermissibly attempted to interfere with USEI's expert (Cause No. 6:14-cv-261), TI engaged in unprofessional conduct that

---

[4] Especially troubling with regard to the TI Prior Art, TI has not explained why it could not call the designer of the chip—who is still employed by TI—to testify. *See OPTi Inc. v. Silicon Integrated Sys. Corp.*, 2:10-CV-00279, 2013 WL 4494707, at *5 (E.D. Tex. Aug. 19, 2013).

[5] TI also asserted that the loss of several of 3Com's marking samples prevented it from proving its marking defense. But TI's marking defense did not center on 3Com's failure to mark its product. Instead, TI based its marking defense on the failure of IBM—who owned a license to 3Com's patent portfolio—to mark its products. Thus, the Court finds this contention—which was not advanced at the hearing—to be without merit.

threatened, but fortunately did not affect, the integrity of this litigation. Sitting in equity, the Court cannot countenance such behavior—let alone allow it to benefit from an equitable remedy.

**Conclusion**

For the reasons explained more thoroughly above, the Court **REJECTS** Defendant's laches defense.

**It is SO ORDERED.**

**SIGNED this 18th day of September, 2014.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE